1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18
19
20
21
22

| A.S. URMANCHEEV,<br>#A075117610,<br><br>                                    Plaintiff,<br><br>v.<br><br>UNITED STATES, et al.,<br><br>                                    Defendants. | Case No.:  22-CV-1039 JLS (MMP)<br><br>**ORDER REGARDING AMENDED COMPLAINT**<br><br>**1) DISMISSING ALL DEFENDANTS EXCEPT THE UNITED STATES PURSUANT TO 28 U.S.C. § 1915(e)(2)(B)**<br><br>**2) DIRECTING U.S. MARSHAL TO EFFECT SERVICE OF COMPLAINT AND SUMMONS ON DEFENDANT UNITED STATES PURSUANT TO § 1915(d) & Fed. R. Civ. P. 4(c)(3)**<br><br>(ECF No. 29) |

23
24
25
26
27
28

Presently before the Court is *pro se* Plaintiff A.S. Urmancheev's Second Amended Complaint ("SAC," ECF No. 29).  As Plaintiff is proceeding *in forma pauperis* ("IFP"), the SAC is subject to mandatory screening pursuant to 28 U.S.C. § 1915(e)(2).  Having carefully considered Plaintiff's pleading and the law, the Court finds Plaintiff's SAC alleges plausible Federal Tort Claims Act claims for false imprisonment, negligence, and

1

infliction of emotional distress, but fails to state any other viable claim for relief against Defendant United States of America and fails to state a viable claim for relief as to any other named Defendants.  Therefore, for the reasons explained more fully below, the Court **DISMISSES** all Defendants other than the United States pursuant to 28 U.S.C. § 1915(e)(2)(B), **DIRECTS** the clerk to issue a summons upon Defendant United States, and **ORDERS** the U.S. Marshal to effect service of process upon Defendant United States pursuant to 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(c)(3).

## BACKGROUND

On July 15, 2022, Plaintiff—who had been detained at the Otay Mesa Detention Center ("Otay Mesa") in San Diego, California[1]—filed a Complaint pursuant to the Administrative Procedures Act ("APA"); the Federal Tort Claims Act ("FTCA"); the Immigration and Naturalization Act ("INA"); the First, Fourth, and Fifth Amendments to the United States Constitution; and unspecified provisions of the California Constitution and California Civil Code.  *See generally* ECF No. 1 ("Compl.").  Plaintiff also filed a motion to proceed IFP on the same day.  *See* ECF No. 2.

On October 5, 2022, this Court granted Plaintiff's IFP Motion and dismissed Plaintiff's original Complaint without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to pass muster under Federal Rule of Civil Procedure 8.  *See generally* ECF No. 3 ("Complaint Order").  The Court also noted several deficiencies in each of Plaintiff's causes of action.  For example, Plaintiff had failed to state INA, APA, and FTCA claims because he had not adequately alleged exhaustion of his administrative remedies.  *Id.* at 7.  Plaintiff's constitutional claims were also found wanting because the Court doubted whether Plaintiff could invoke *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  *See id.* at 10.  The Court, however, granted Plaintiff forty-five (45) days to file an amended complaint.

---

[1] Though Plaintiff does not clarify his detention status in any of his pleadings, Plaintiff appears to no longer be detained based on his Notice of Change of Address.  *See* ECF No. 12.

After moving for—and receiving—multiple extensions, *see* ECF Nos. 8, 13, 16, 18, Plaintiff filed a First Amended Complaint ("FAC," ECF No. 20) on July 14, 2023. After conducting the same mandatory screening, the Court dismissed the FAC on October 30 of the same year. *See* ECF No. 22 ("FAC Order"). Though Plaintiff had provided more factual detail in his FAC with respect to some of his claims, he again failed to sufficiently plead the exhaustion of administrative remedies as to his FTCA claims (the FAC did not include the INA and APA causes of action contained in the original Complaint). *See id.* at 5–6. Meanwhile, the Court found Plaintiff could not bring his Fifth Amendment claim for damages against the United States itself—the only defendant named in the FAC—on sovereign immunity grounds. *See id.* at 9. Finally, the Court explained that the FAC lacked any theory of liability to support Plaintiff's state law claims. *Id.* at 10. The Court again granted Plaintiff leave to amend.

Another round of motions to extend ensued before Plaintiff filed the SAC on April 30, 2024.

## FACTUAL ALLEGATIONS

Plaintiff claims he was arrested by Department of Homeland Security ("DHS") Immigration and Customs Enforcement ("ICE") officers on April 30, 2019, despite his status as a permanent resident of the U.S., while he was in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). SAC ¶ 8. Specifically, Plaintiff claims Defendants Boyd and Boone, both of ICE's Fresno field office, "misinformed" Plaintiff that he was "being detained under provisions of the INA." *Id.* ¶¶ 6, 9. Boyd then "illegally served" an arrest warrant and a "defective Notice to Appear" on Plaintiff. *Id.* ¶ 10. Next, Plaintiff's "property was illegally searched," and some of it was ultimately seized. *Id.* ¶ 11.

After the arrest, Plaintiff was purportedly "unlawfully imprisoned" in Otay Mesa for thirty-seven months. *Id.* ¶ 12. During this time, "ICE refrained from answering [P]laintiff's questions about the propriety of [his] detention." *Id.* ¶ 13. His cell was also unlawfully searched on many occasions and "some property [was] seized including legal

documents." *Id.* ¶ 14.

While detained, Plaintiff was held in solitary confinement on five separate occasions (for a total nine months). *Id.* ¶ 17. During these periods of isolation, Plaintiff claims he lacked access to "adequate and appropriate mental health care" despite his "well documented" "struggle with . . . schizoaffective disorder." *Id.* ¶ 17. As a result, Plaintiff experienced "a great deal of mental disturbance and anguish." *Id.* ¶ 18. And even though ICE officers visited—and met weekly to review the status of—those in solitary confinement, *id.* ¶¶ 21–22, no mental health professional ever evaluated Plaintiff's condition, *id.* ¶ 27.

Plaintiff was placed in solitary confinement without explanation or hearing on at least one occasion, *see id.* ¶ 26, and on others solitary confinement was the result of false charges being levied against Plaintiff, *see id.* ¶¶ 28, 32, 34, 48. On one occasion, Plaintiff learned he was put in segregation as retaliation for having complained about "sexual harassment and battery by a jailer." *Id.* ¶ 27. Relatedly, ICE negligently handled said complaint by issuing conflicting investigatory findings, deeming Plaintiff's allegations "substantiated" on August 4, 2020, and "unfounded" on October 7, 2020. *Id.* ¶ 31.

Plaintiff allegedly faced several forms of harassment while in solitary confinement. Plaintiff's "jailers" (1) subjected him "to a strip search sanctioned by ICE" for trying to bring leftover food to his quarters, *id.* ¶ 33; (2) took Plaintiff's "clothes, sheets, blanket," and "towel" away for two weeks, *id.* ¶ 49; (3) seized Plaintiff's legal documents and denied him access to the law library and his attorney's phone calls, *id.* ¶¶ 14, 36; (4) "verbally abused" him using "derogatory" and "demeaning terms" related to "sexual references, [P]laintiff's mental condition, and ethnic background," *id.*; and (5) turned Plaintiff's lights on and off to prevent him from sleeping, *id.* In response to his appeal via the established grievance process contesting "arbitrary segregation and abuse," ICE concurred with the jailers. *Id.* ¶ 51.

Plaintiff also alleges "ICE and the jail . . . more than doubled [P]laintiff's cell block population by transferring detainees" during the COVID-19 pandemic, *id.* ¶ 43, causing

Plaintiff to become infected with the COVID-19 virus in May 2020, and become "gravely ill for about three weeks," *id.* ¶ 42. ICE "failed to implement masking for both jailers and detainees, social distancing, appropriate hygiene, testing and medical care and monitoring," *id.* ¶ 45, which caused Plaintiff to get very ill with COVID-19 for a second time, *id.* ¶¶ 47, 64, resulting in long Covid, *id.* ¶ 66.

Plaintiff also indicates he acquired Helicobacter Pylori infection through contaminated food, which caused an acute gastroesophageal reflux disease ("GERD") that he continues to suffer from. *Id.* ¶ 75.

## LEGAL STANDARD

A complaint filed by litigant proceeding IFP is subject to *sua sponte* dismissal if it is "frivolous, [is] malicious, fail[s] to state a claim on which relief may be granted, or seek[s] monetary relief from a defendant immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) (per curiam) (holding "the provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners"); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) ("[S]ection 1915(e) not only permits but requires a district court to dismiss an [IFP] complaint that fails to state a claim.").

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility requires pleading facts supporting a claim for relief, as opposed to conclusory allegations or the "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

Further, courts have a duty to construe a pro se litigant's pleadings liberally.  *See Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).  A district court should grant leave to amend if it appears "at all possible that the plaintiff can correct the defect."  *Lopez*, 203 F.3d at 1130 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988)).

## ANALYSIS

### I.    FTCA Claims

Plaintiff alleges claims against "ICE agents or employees while acting within the scope of their respective office or employment under circumstances where the United States, if a private person, would be liable to Plaintiff in accordance with the laws of the State of California."  SAC ¶ 5.  Accordingly, the Court construes the SAC's first, second, third, fourth, fifth, and ninth causes of action—false arrest, false imprisonment, violation of the California Civil Rights Act, negligence, intentional infliction of emotional distress, and violation of the California Tort Claims Act respectively—to arise under the FTCA.

### A.    Applicable Law

"Under settled principles of sovereign immunity, the United States, as sovereign, is immune from suit, save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."  *United States v. Dalm*, 494 U.S. 596, 608 (1990) (internal quotations omitted).  "The FTCA provides a limited waiver of the sovereign immunity of the United States for torts committed by federal employees acting within the scope of their employment."  *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000) (citing *Valdez v. United States*, 56 F.3d 1177, 1179 (9th Cir. 1995)).  "The FTCA is the exclusive remedy for tortious conduct by the United States, and it only allows claims against the United States. Although such claims can arise from the acts or omissions of United States agencies . . ., an agency itself cannot be sued under the FTCA."  *F.D.I.C. v. Craft*, 157 F.3d 697, 706 (9th Cir. 1998).  Thus, where a federal official was acting within the scope of his office or employment, "the United States shall be substituted as the party defendant."  28 U.S.C. § 2679(d)(1).  Further, the FTCA waives

sovereign immunity only for damages claims against the United States; the statute does not subject the United States to claims for injunctive relief. *See Westbay Steel, Inc. v. United States*, 970 F.2d 648, 651 (9th Cir. 1992).

However, Congress also carved out exceptions to waiver under the FTCA for certain torts. Among other things, the FTCA expressly retains the United States's sovereign immunity for claims "arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). The phrase "arising out of" is interpreted broadly to include all injuries that are dependent upon one of the enumerated torts having been committed. *United States v. Shearer*, 473 U.S. 52, 55 (1985) ("Section 2680(h) does not merely bar claims *for* assault or battery; in sweeping language it excludes any claim arising out of assault or battery."); *see DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1123 (9th Cir. 2019) ("[I]f the governmental conduct underlying a claim falls within an exception outlined in section 2680, the claim is barred, no matter how the tort is characterized."). Congress limited applicability of this carve-out by providing that the intentional-tort exception does not apply (i.e., the United States's sovereign immunity is waived) to claims arising out of "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution" committed by "investigative or law enforcement officers." 28 U.S.C. § 2680(h). "For the purpose of this subsection, 'investigative or law enforcement officer' means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id.*

"The FTCA holds the government liable for its torts to the same extent as a private individual in similar circumstances." *Edison v. United States*, 822 F.3d 510, 513–14 (9th Cir. 2016). In an FTCA action, "the law of the state in which the alleged tort occurred" is the applicable law. *Conrad v. United States*, 447 F.3d 760, 767 (9th Cir. 2006); *see also Jachetta v. United States*, 653 F.3d 898, 904 (9th Cir. 2011) ("The FTCA authorizes private tort actions against the United States 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place

where the act or omission occurred.'" (citation omitted)).

The timely filing of an administrative claim is a jurisdictional prerequisite to the bringing of a suit under the FTCA and must be affirmatively alleged in the complaint. *See* 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 111–13 (1993); *Gillespie v. Civiletti*, 629 F.2d 637, 640 (9th Cir. 1980). No action may be instituted under the FTCA unless the claimant first presented his claim to the appropriate federal agency and either the claim was finally denied by the agency in writing and sent by certified or registered mail, or the agency failed to make final disposition of the claim within six months of its filing. *See* 28 U.S.C. § 2675(a). Moreover, because the FTCA's exhaustion requirement is jurisdictional in nature, it "must be strictly adhered to." *Brady v. United States*, 211 F.3d 499, 502 (9th Cir. 2000) (citation omitted); *see also Vacek v. U.S. Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006).

### B.    Analysis

#### I.    Exhaustion of FTCA Claims

First, the Court finds Plaintiff has cured the deficiencies identified in the Court's prior Orders and adequately pled exhaustion for purposes of § 1915(e)(2) screening. The SAC contains more detailed allegations regarding exhaustion than did Plaintiff's earlier pleadings. Plaintiff states he sent the claims outlined in the SAC to "the ICE headquarters in Washington, D.C.," by mail on July 12, 2021. SAC ¶ 77. This mailing purportedly included (1) the names of the individual officers listed as defendants in Paragraph Six of the SAC, (2) detailed descriptions of said officers' allegedly tortious conduct and Plaintiff's injuries, and (3) requested the specific sum of $8,483,721 in damages. *See id.* Per Plaintiff, ICE "did not acknowledge the receipt of [his] claim" and "failed to make a final disposition." *Id.* The SAC's allegations, taken as true, establish that Plaintiff sent a reasonably detailed summary of his claims to the appropriate agency, requested a sum certain demand, and waited to file this action until after ICE failed to issue a final decision on his claim.

/ / /

## II.    FTCA Intentional Tort Exception

Next, the Court addresses whether Plaintiff's FTCA claims are otherwise barred by the intentional tort exception.  While the FTCA excludes from its operation any claim arising out of false arrest and false imprisonment, *see* 28 U.S.C. § 2680(h), the statute permits actions against the United States based on false imprisonment, or false arrest arising from acts or omissions of its investigative or law enforcement officers that arise within the scope of their employment, *see Millbrook v. United States*, 569 U.S. 50, 57 (2013).

Here, Plaintiff alleges the acts or omissions giving rise to the false imprisonment and false arrest claims were performed by investigative and law enforcement officers of the United States, specifically "DHS ICE officers."  SAC ¶ 6.  Accordingly, Plaintiff has sufficiently pled, for the purposes of § 1915(e)(2) screening, his claims arise from acts or omissions of officers of the United States "who [are] empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law."  28 U.S.C. § 2680(h).

## III.    False Arrest / False Imprisonment

Under California law, which governs the United States's liability for Plaintiff's claims, the torts of false arrest based on false imprisonment are not separate torts, rather, false arrest is "but one way of committing false imprisonment."  *Watts v. County of Sacramento*, 256 F.3d 886, 891 (9th Cir. 2001) (quoting *Asgari v. City of Los Angeles*, 937 P.2d 273, 277 n.3 (Cal. 1997)).  "A cause of action for false imprisonment based on unlawful arrest will lie where there was an arrest without process followed by imprisonment."  *Watts*, 256 F.3d at 891 (citations omitted).

The elements of a claim for false imprisonment under California law are: "(1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief."  *Young v. County of Los Angeles*, 655 F.3d 1156, 1169 (9th Cir. 2011) (quotation and citation omitted).  With respect to element two, "without lawful privilege," a law enforcement officer is not liable for false

imprisonment arising out of an arrest if "[t]he arrest was lawful" or the officer "at the time of the arrest, had reasonable cause to believe the arrest was lawful."  Cal. Pen. Code § 847(b)(1).[2]

The SAC alleges Plaintiff is a permanent U.S. resident, who was in custody of the CDCR, and was unlawfully arrested by DHS ICE Officer Boyd prior to his release date, in contravention of the INA, California Penal Codes, and the California and United States Constitutions.  SAC ¶¶ 8–9.  Plaintiff alleges DHS ICE Officer Boyd misinformed him about his detention, and illegally served him with a warrant and defective Notice to Appear.  *Id.*  ¶¶ 9–10.  He indicates he was unlawfully imprisoned in the Otay Mesa Detention Center for 37 months.  *Id.* ¶ 12.  Because these allegations, if taken as true, constitute an unlawful detention, construing Plaintiff's *pro se* Complaint liberally, he has adequately pled his FTCA false imprisonment claim to satisfy the low threshold for surviving § 1915(e)(2) screening.

### IV.    California Civil Rights Act

Plaintiff also raises a claim "under the California Civil Rights Act," alleging ICE employees or agents interfered or attempted to interfere with various federal and state laws and the California and U.S. Constitutions.  SAC ¶¶ 92–97.  The Court liberally construes this claim to arise under California Civil Code § 52.1 (the "Bane Act"), which "civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out 'by threats, intimidation or coercion.'"  *Reese v. County of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (quotation omitted).  However, Plaintiff has not addressed the deficiencies previously identified by the Court with respect to this claim.  *See* FAC Order at 8–10.  In particular, Plaintiff's SAC again does not identify which factual allegations support this claim specifically.  Plaintiff's

---

[2] California Penal Code Section 847(b)(1) applies to FTCA claims for false arrest and false imprisonment. *See Lopez v. United States*, No. 23-cv-04292-DMR, 2024 WL 3588013 (N.D. Cal. July 29, 2024) (first citing *Cervantes v. United States*, 330 F.3d 1186, 1188 (9th Cir. 2003); and then citing *Galvin v. Hay*, 374 F.3d 739, 758 (9th Cir. 2004)).

general and conclusory allegations remain insufficient to state a claim. *See Twombly*, 550 U.S. at 555 & n.3 (2007) (holding that a complaint must allege enough specific facts to provide both "fair notice" of the particular claim being asserted and the grounds upon which [that claim] rests); *Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 199 (9th Cir. 1995) (finding that even *pro se* pleadings "must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong").

Accordingly, the Court dismisses Plaintiff's California Civil Rights Act claim against the United States for failure to state a claim upon which relief may be granted. The Court finds further leave to amend as to this claim would be futile as Plaintiff has not alleged any different or new facts that could amount to a viable claim, despite prior leave to do so. *See Rodriguez v. Steck*, 795 F.3d 1187, 1188 (9th Cir. 2015) (holding that a district court may deny leave to proceed *in forma pauperis* where it "first provides a plaintiff leave to amend the complaint or finds that amendment would be futile") (citation omitted); *see also Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where district court had instructed the *pro se* plaintiff regarding the deficiencies in a prior order and granted leave to amend).

## V. *Negligence*

As to Plaintiff's negligence claims, in California, negligence is the "failure to exercise the care that a reasonable person would under the circumstances." *Esteghlalian v. Dep't of Navy,* No. 19-cv-01808-AJB-MSB, 2020 WL 3250611 (S.D. Cal. June 16, 2020) (citing *Massey v. Mercy Med. Ctr. Redding*, 103 Cal. Rptr. 209, at 213 (Ct. App. 2009)). To state a claim of negligence, Plaintiff must allege: (1) the existence of a legal duty of care, (2) breach of that duty, (3) proximate cause, and (4) injury. *Castellon v. U.S. Bancorp*, 163 Cal. Rptr. 3d 637, 640 (Ct. App. 2013).

Construed liberally, the SAC alleges ICE employees violated a duty of care to Plaintiff by inadequately reviewing his solitary confinement orders; *see* SAC ¶¶ 18–20, failing to provide mental health evaluations; *id.* ¶¶ 27, 35, 52, 59, failing to adhere to guidance regarding the COVID-19 pandemic by the Center of Disease Control and other

California and municipal regulations; *see id.* ¶¶ 42–47, inadequately responding to Plaintiff's complaints of "harassment, arbitrary hearings, and deprivations;" *see id.* ¶¶ 36–40, and failing to control the quality, quantity, and freshness of food, *see id.* ¶¶ 72–73, and these violations caused his injuries, *see id.* ¶¶ 18, 47, 67, 74–75, 125. Accordingly, Plaintiff's negligence claims survive screening.

## VI.    Intentional Infliction of Emotional Distress

Under California law, the elements of a prima facie case for the tort of intentional infliction of emotional distress are:

> (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by [the] defendant's outrageous conduct.

*Sabow v. United States*, 93 F.3d 1445, 1454 (9th Cir. 1996) (citing *Christensen v. Superior Ct.*, 820 P.2d 181, 202 (Cal. 1991)). "Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Miller v. Fortune Com. Corp.*, 223 Cal. Rptr. 3d 133, 143 (Ct. App. 2017).

Here, Plaintiff alleges ICE agents or jailers continuously placed him solitary confinement without explanation or hearing, on frivolous charges, or on one occasion, in response to his complaint of a sexual harassment and battery against him by a jailer, without adequate and appropriate mental health care, despite his struggle with "well-documented mental illness, schizoaffective disorder," and these actions caused him "mental disturbance and anguish." *See* SAC ¶¶ 17–19, 26–28. As such, Plaintiff has adequately pled his intentional infliction of emotional distress claim to survive § 1915(e)(2) screening.

## VII.    California Torts Claims Act

Finally, Plaintiff alleges a claim under the California Torts Claims Act, asserting "DHS ICE, and its officers named as defendants are liable to [Plaintiff] for committing

torts of false imprisonment and false arrest." SAC ¶ 13. As discussed above, the Court finds Plaintiff has sufficiently stated a claim for false imprisonment, for the purposes of screening, against the United States. To the extent Plaintiff seeks to assert such a claim against the agency or federal officials within the scope of their office or employment, the FTCA provides the exclusive remedy, and the only proper Defendant is the United States. *F.D.I.C.*, 157 F.3d at 697 ("The FTCA is the exclusive remedy for tortious conduct by the United States, and it only allows claims against the United States. Although such claims can arise from the acts or omissions of United States agencies . . ., an agency itself cannot be sued under the FTCA."); *see also Hall v. Mueller*, 84 F. App'x 814 (9th Cir. 2003) ("[The plaintiff's] FTCA claims against the individual defendants fail because the only proper defendant for an FTCA claim against a federal employee for actions taken within the scope of employment is the United States.").

Accordingly, as indicated above, the Court finds Plaintiff has stated a claim under the FTCA for false imprisonment as to the United States but fails to state a claim against any other Defendant. Because it is clear Plaintiff cannot state an FTCA claim against Defendants other than the United States, and the Court has already found Plaintiff has stated such a claim against the United States, dismissal as to other Defendants is without leave to amend. *See U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001) ("Futility of amendment can, by itself, justify the denial of . . . leave to amend.").

## II.    Plaintiff's Constitutional Claims

Plaintiff additionally asserts claims for violations of his rights under the U.S. Constitution. As an initial matter, as explained previously in the Court's Order dismissing Plaintiff's FAC, the United States has not waived sovereign immunity for constitutional tort claims. *See* FAC Order at 9; *see also F.D.I.C.*, 510 U.S. at 477–78 ("[T]he United States simply has not rendered itself liable . . . for constitutional tort claims."); *see also Jachetta*, 653 F.3d at 904 ("Although these claims may be characterized as constitutional torts, they are not actionable under the FTCA because any liability would arise under

federal rather than state law. Accordingly, the FTCA does not provide a waiver of sovereign immunity for these claims."). As such, to the extent Plaintiff seeks to allege a claim against the United States for constitutional violations, Plaintiff has failed to state a claim, and such claim is dismissed without leave to amend, as amendment would be futile.

However, a claim that individual federal custodial officers violated a detainee's Constitutional rights may be brought under *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). In *Bivens*, the Court "recognized for the first time an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Vega v. United States*, 881 F.3d 1146, 1152 (9th Cir. 2018) (quoting *Hernandez v. Mesa*, 582 U.S. 548, 553 (2017) (citation omitted)). The Supreme Court has cautioned against expanding a *Bivens* implied right of action into new contexts beyond those already recognized. *See Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017).

Since *Bivens* was decided, the Supreme Court has expressly recognized an implied cause of action in only three types of cases: (1) *Bivens* itself, which recognized a cause of action for violation of the Fourth Amendment's right against unreasonable searches and seizures; (2) *Davis v. Passman*, 442 U.S. 228 (1979), which recognized a claim for gender discrimination in the employment context under the Fifth Amendment's Due Process Clause; and (3) *Carlson v. Green*, 446 U.S. 14 (1980), which recognized a claim against prison officials for inadequate medical care in the prison context under the Eighth Amendment.

Attempting to "expand[ ] the Bivens remedy" beyond the above contexts "is now a 'disfavored' judicial activity" requiring caution. *Abbasi*, 582 U.S. at 135 (citing *Iqbal*, 556 U.S. at 675); *see also Egbert v. Boule*, 596 U.S. 482, 483 (2022). A context is new—requiring a special factors analysis—if it is "different in a meaningful way from previous Bivens cases decided by [the Supreme] Court." *Abbasi*, 582 U.S. at 139. The Court in *Abbasi* did not provide an exhaustive list of differences that are meaningful enough to make a given context new, but noted the following examples:

22-CV-1039 JLS (MMP)

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider.

*Id.* at 139–40.  Even if a case has "significant parallels" to one of the three previously recognized *Bivens* claims, and would only be a "modest extension," it would still arise in a new context.  *Thomas v. Matevousian*, No. 117CV01592AWIGSAPC, 2019 WL 266323, at *1 (E.D. Cal. Jan. 18, 2019) (citing *Abbasi*, 582 U.S. at 147).  If the claim falls within a previously established context, however, the *Bivens* remedy is available.  *Abbasi*, 582 U.S. at 139; see also *Lanuza v. Love*, 899 F.3d 1019, 1023 (9th Cir. 2018).

If a claim presents a new *Bivens* context, the court must then consider whether there are special factors counseling against extension of *Bivens* in that context.  *Abbasi*, 582 U.S. at 136.  The Supreme Court's *Bivens* jurisprudence "now make[s] clear that a *Bivens* remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'"  *Id.* (quoting *Carlson*, 446 U.S. at 18).  Thus, "the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed."  *Id.* at 136.  This requires the court to assess the impact on governmental operations system-wide, including the burdens on government employees who are sued personally, as well as the projected costs and consequences to the government itself.  *Id.*  Also, "if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."  *Id.* at 137.

/ / /

### A.    *Fifth Amendment Due Process and Fourth Amendment Claims*

#### 1.    *New Context*

Turning to Plaintiff's Fourth Amendment claim against Defendants Boyd and Boone and Fifth Amendment claim against Defendants Mayorkas, Boyd, and Boone, the Court finds such claims arise in new contexts because they are substantially and meaningfully different from the three types of cases in which the Supreme Court has recognized a *Bivens* remedy.

As to Plaintiff's Fifth Amendment claim, Plaintiff's allegations Defendants Mayorkas, Boone, and Boyd violated his due process rights by making "an unlawful and frivolous arrest," *see* SAC ¶ 111, bear little resemblance to the Fifth Amendment due process claim recognized in *Davis,* where the plaintiff, an administrative assistant to a U.S. congressman, was terminated based on her sex, 442 U.S. at 244.

With respect to Plaintiff's Fourth Amendment claim, while a claim under the Fourth Amendment was recognized in *Bivens*, the context involved a warrantless entry into the plaintiff's home at night based on suspected drug offenses.  403 U.S. at 389.  Here, Plaintiff's claim involves an arrest by ICE officials while in custody of the CDCR, implicating meaningful differences as to the individual's expectation of privacy.  *See Mejia v. Miller*, 61 F.4th 663, 668 (9th Cir. 2023) (concluding a meaningful difference existed where the events did not occur in or near Plaintiff's home, and instead on public lands where Plaintiff had no reasonable expectation of privacy).  Further, Plaintiff's Fourth Amendment claim involves a new category of defendants operating under a different legal mandate as compared to *Bivens*—both meaningful differences under *Abbassi.  See Sheikh v. U.S. Dep't of Homeland Sec.*, 106 F.4th 918, 925 (9th Cir. 2024); *Nunez v. Jones*, No. 2:18-CV00375-HL, 2023 WL 6297362, at *5 (D. Or. May 3, 2023) ("[T]here is no evidence in the record that would suggest that ICE 'has the same mandate as agencies enforcing federal anti-narcotics law.'" (citations omitted)); *Escamilla v. United States*, No. 217CV07748ODWMRWX, 2018 WL 1684307, at *10 (C.D. Cal. Apr. 4, 2018) ("[E]mployees of DHS and ICE . . . are a new class of defendants who have never been

subjected to a *Bivens* suit.").

Accordingly, Plaintiff's Fourth and Fifth Amendment claims arise in new *Bivens* contexts.

### 2. Factors Counsel Hesitation Against Extending *Bivens*

Special factors counsel hesitation in extending *Bivens* to Plaintiff's claims, such as an existing administrative remedy: DHS's requirement under 8 C.F.R. § 287.10 to investigate alleged violations of the standard for enforcement activities. *See Egbert*, 596 U.S. at 493 ("[O]ur cases hold that a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the executive to provide, 'an alternative remedial structure.'" (citation omitted)). Under 8 C.F.R. § 287.10(a), "[a]lleged violations of the standards for enforcement activities established in accordance with the provisions of § 287.8 shall be investigated expeditiously consistent with the policies and procedures of [DHS]." Any person wishing to lodge a complaint that an officer has violated the enforcement standards set out in Section 287.8 may contact the DHS Office of the Inspector General. 8 C.F.R. § 287.10(b). Section 287.8 applies to "every immigration officer involved in enforcement activities," and provides in pertinent part, that "[a]n arrest shall be made only when the designated immigration officer has reason to believe that the person to be arrested has committed an offense against the United States or is an alien illegally in the United States," *id.* § 287.8(c)(2)(i). Further, the standards for enforcement activities incorporate "all applicable guidelines and policies of . . . [DHS]." *Id.* § 287.8(g). The existence of this remedy, accordingly, weighs against extending *Bivens* here. *See Egbert* 596 U.S. at 497–98; *see also Sheikh*, 106 F.4th at 928 n.9 (noting *Egbert* cited Section 287.10 as an alternative available remedy foreclosing an extension of *Bivens*).

The Court need not go further. "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Egbert*, 596 U.S. at 492 (quoting *Hernandez*, 589 U.S. at 102). However, here hesitation is additionally warranted as Plaintiff brings his claims against DHS ICE agents responsible for immigration investigation. In *Egbert*, the Court determined that "national security

[was] at issue" where a defendant federal official was "carrying out Border Patrol's mandate" of investigating unlawful cross-border activity when the alleged altercation occurred. 596 U.S. at 494. The Court reaffirmed that "[m]atters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention." *Id.* (alteration in original). Further, "[i]mmigration investigations in *this* country . . . impact the national security of the United States." *Id.* (emphasis in original). Such concerns provide a reason to think Congress might be better equipped to create a damages remedy. *See Nunez*, 2023 WL 6297362, at *6 ("[N]ational security concerns provide a reason to believe that Congress is at least arguably better equipped to create a damages remedy against ICE officers.").

The Court finds there is a "rational reason . . . to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed,'" *Egbert*, 596 U.S. at 496, in light of the existing remedial structure and that the claims are leveled against DHS agents who investigate immigration. Accordingly, Plaintiff has failed to state *Bivens* claims under the Fourth or Fifth Amendment against Defendants Boyd, Boone, and Mayorkas.

The Court finds amendment would be futile as to these claims under *Bivens*, considering the facts alleged and Plaintiff's prior opportunities to amend, and accordingly dismisses such claims without leave to amend. *See U.S. ex rel. Lee*, 245 F.3d at 1052 ("Futility of amendment can, by itself, justify the denial of . . . leave to amend.").

As to Plaintiff's Fourth Amendment claims that "Defendants, except for Boyd, Boone, and Mayorkas, continued to execute and authorize innumerable searches of plaintiff, and searches and seizures of plaintiff's property during thirty-seven months of unauthorized detention," SAC ¶ 117, and "Defendant Cordero authorized an illegal strip and cavity search of Plaintiff's person," *id.* ¶ 118, the Court does not reach whether such claims could properly be brought under *Bivens*, as Plaintiff fails to comply with Rule 8 of the Federal Rules of Civil Procedure. As to Plaintiff's claim of "innumerable searches," he does not identify what factual allegations are tied to which specific Defendant. With

respect to his claim against Defendant Cordero, Plaintiff has not provided any factual allegations from which the Court could draw a reasonable inference Defendant Cordero is liable for the alleged misconduct. Such wholly conclusory allegations fail to state a claim. *See Iqbal*, 556 U.S. at 678 (holding that the "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting the plausibility standard).

The Court finds leave to amend as to Plaintiff's Fourth Amendment claims against "Defendants except for Boyd, Boone, and Mayorkas" is not warranted as Plaintiff has not pled new or different facts that could amount to a viable claim, despite prior leave to do so. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc*, 637 F.3d 1047, 1058 (9th Cir. 2011) (holding that district court has "particularly broad" discretion to dismiss action without leave to amend when plaintiff has previously amended complaint) (citations omitted); *see also Knapp v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013) (finding it "reasonable to conclude that [ ] litigant simply *cannot* state a claim" when the litigant "knowingly and repeatedly refuses to [comply with the pleading requirements of Rule 8]" despite being granted leave to amend to correct deficiencies in complaint) (citation omitted; emphasis in original).

Accordingly, Plaintiff's Fourth and Fifth Amendment claims are dismissed without leave to amend.

### B.    *Fifth and Eighth Amendment Claims*

Finally, Plaintiff alleges Defendants "ICE officers assigned to the San Diego ICE Field Office," violated Plaintiff's Fifth and Eighth Amendment rights by authorizing his placement and treatment in solitary confinement, failing to comply with regulations related to COVID-19, and their approval of "functions of the jail's kitchen," where Plaintiff contracted H-Pylori. SAC ¶¶ 121–26. The Court does not reach whether such claims arise in new contexts under *Bivens*, and if so, whether a *Bivens* should be extended, as the Court finds Plaintiff fails to address the deficiencies identified in the Court's prior orders.

In particular, Plaintiff fails to allege how each claim is connected to any specific

Defendant, and accordingly has not shown any *individual* federal officer violated his Constitutional rights.   Plaintiff lists "Albence, Archimbault, Ortiz, Paramo, Gracio, Dobson, Beckhelm, Kitchens, Jobe, Redcay, Ramirez, Wilcox, Kendall, Cordero, Nguen, Ramirez, Brunette, Estudio, [and] Saxton," as "DHS ICE officers of the San Diego ICE ERO Office," SAC ¶ 6, but fails to attribute factual allegations to any of these defendants.[3] Accordingly, Plaintiff has not met the "minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong."  *Brazil*, 66 F.3d at 199.

Given Plaintiff's continued failure to cure the pleading deficiencies as to these claims, and the lack of any identifiable claim of relief against any of these specific Defendants in the SAC, the Court finds leave to amend these claims would be futile.  *See Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (noting that a district court may deny plaintiff leave to amend if "the plaintiff had several opportunities to amend [his] complaint and repeatedly failed to cure deficiencies," *Forman v. Davis*, 371 U.S. 178, 182 (1962)).

As such, the Court dismisses Plaintiff's Fifth and Eighth Amendment claims for failure to state a claim, and such dismissal is without leave to amend.

## CONCLUSION

For the reasons discussed, the Court:

1.    **DISMISSES** all claims in Plaintiff's Second Amended Complaint (ECF No. 29) against Defendants DHS ICE Officers Boone, Boyd, Albence, Archimbault, Ortiz, Paramo, Gracio, Dobson, Beckhelm, Kitchens, Jobe, Redcay, Ramirez, Wilcox, Kendall, Cordero, Nguen, Ramirez, Brunette, Estudio, and Saxton without leave to amend pursuant to 28 U.S.C. § 1915(e)(2).

---

[3] The Court notes the SAC mentions Defendant Cordero once, however, this allegation does not appear to relate to Plaintiff's Fifth and Eighth Amendment claims.  In any event, as addressed above, the allegation is conclusory and devoid of factual content required to state a claim.  *See Twombly*, 550 U.S. at 555 (holding that plausibility requires pleading facts supporting a claim for relief, as opposed to conclusory allegations or the "formulaic recitation of the elements of a cause of action").

2.     **DISMISSES** without leave to amend all claims against Defendant United States, with the exception of the FTCA claims for false imprisonment, negligence, and intentional infliction of emotional distress.

3.     **DIRECTS** the Clerk of the Court to issue a summons as to Plaintiff's Second Amended Complaint (ECF No. 29) upon Defendant United States of America and forward it to Plaintiff.  Because Plaintiff is suing the United States, he must serve Defendant in accordance with Rule 4(i).  See Fed. R. Civ. P. 4(i)(1).  The Clerk is hereby directed to include in Plaintiff's IFP package two separate copies of this Order, Plaintiff's Second Amended Complaint, the summons, and two blank USM Form 285s for Plaintiff's use in serving the United States via the United States Attorney for the Southern District of California and the Attorney General of the United States in Washington, D.C.  *See* Fed. R. Civ. P. 4(i)(1)(A)–(B).  Upon receipt of this "IFP Package," Plaintiff must complete the Form 285s as completely and accurately as possible, include addresses where the Defendant may be served, *see* S.D. Cal. CivLR 4.1.c, and return them to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package.

4.     **ORDERS** the U.S. Marshal to serve a copy of the Second Amended Complaint and summons upon Defendant United States of America as directed by Plaintiff on the USM Form 285.  Costs of service will be advanced by the United States.  *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

5.     **ORDERS** Defendant, once served, to reply to Plaintiff's Second Amended Complaint and any subsequent pleading Plaintiff files in this matter in which Defendant is named as a party within the time provided by the applicable provisions of Federal Rules of Civil Procedure 12(a) and 15(a)(3).

6.     **ORDERS** Plaintiff, after service has been made by the U.S. Marshal, to serve upon Defendant, or if appearance has been entered by counsel, upon Defendant's counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b).  Plaintiff must include with every original

document sought to be filed with the Clerk, a certificate stating the manner in which a true and correct copy of that document has been served on Defendant or their counsel, and the date of that service. *See* S.D. Cal. CivLR 5.2. Any document received by the Court which has not been properly filed with the Clerk or which fails to include a Certificate of Service upon a Defendant, or their counsel, may be disregarded.

**IT IS SO ORDERED.**

Dated:  January 10, 2025

Hon. Janis L. Sammartino
United States District Judge

22-CV-1039 JLS (MMP)